IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID BARLOW,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>        Defendant. | HONORABLE JEROME B. SIMANDLE<br><br><br>Civil Action<br>No. 13-538 (JBS)<br><br><br>**OPINION** |

APPEARANCES:

Robert A. Petruzzelli, Esq.
Jacobs, Schwalbe & Petruzzelli, PC
Woodcrest Pavilion
Ten Melrose Avenue
Suite 340
Cherry Hill, NJ 08003
    Attorney for Plaintiff

Peter Jewett, Special Assistant U.S. Attorney
Social Security Administration
Office of General Counsel
26 Federal Plaza
Room 3904
New York, NY 10278
    Attorney for the Commissioner of the Social Security
    Administration

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

    This matter comes before the Court on Plaintiff David

Barlow's appeal of the Social Security Administration's final

decision denying his application for Disability Insurance

Benefits under the Social Security Act. Because substantial

1

evidence supports the Administrative Law Judge's finding that Plaintiff lacks credibility and is not disabled, and because any errors were harmless, the Court will affirm.

## II.  BACKGROUND

### A. Procedural History

Plaintiff filed an application for disability benefits on July 6, 2011 alleging onset of disability on July 1, 2010. (R. at 202.) His application was denied initially and on reconsideration. (R. at 71, 89.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on May 1, 2012. (R. at 140, 39.) The ALJ denied his application. (R. at 21-34.) Plaintiff requested and was denied review by the Appeals Council. (R. at 17, 1.) The ALJ's Opinion became the Commissioner's final decision. Plaintiff timely filed this action. This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).

### B. Plaintiff's Statements

Plaintiff had a history of work as a tile setter. In his benefits application, Plaintiff said he was unable to work due to the residuals of back injuries, including chronic pain, poor sleep, depression, anger, frustration, and low tolerance for stress, and inability to cope with social situations. (R. at 202-09.) He said that, due to his injuries, he was unable to lift, bend, squat, push, pull, run, jump, or go on long walks.

2

(R. at 203.) He stated that he "can't cook, clean, take out trash tie shoes, showering is extremely difficult, i [sic] take baths, dressing takes time" and "due to migraines can't go outside without powerful sunglasses." (R. at 236.) In subsequent paperwork, he wrote "I can't tie my shoes, get dressed without help." (R. at 247.) He wrote that he had become "very anti-social, short-tempered, [and] agitated in social situations." (R. at 206.) He emphasized: "Along with the difficulties of daily life I simply cannot perform the duties required of a Journeyman Tile Mechanic." (R. at 209.)

At his hearing, Plaintiff testified that he had lost 40 pounds over the past five or six years because depression and anxiety suppressed his appetite. (R. at 43-44.) He "usually ha[s] to take medication just to basically get out of bed." (R. at 49.) He sometimes walks his son to school three blocks away, six blocks roundtrip. (R. at 49.)

Plaintiff previously lived in a hotel; government assistance did not pay for the hotel. (R. at 50.) At the time of the hearing, Plaintiff was living rent-free with friends. (R. at 44.)

Plaintiff gave the friends with whom he lives the $2,000.00 he received from his 2011 tax return. (R. at 44-45.) He had earned $7,000.00 or $8,000.00 in 2011 from three weeks at a tile company remodeling restaurants overnight, side work playing

keyboards, and possibly one other job that he could not recall. (R. at 45.) When he worked the tile job, he lifted boxes weighing 25 to 30 pounds and got on his hands and knees to lay grout. (R. at 46.)

He does "nothing" during the day. (R. at 50.) He watches television, but sound and light hurt his eyes and he has migraines. (R. at 51.) He testified that he sleeps two hours a day, at most, and does not nap. (R. at 53.) He testified that he "[b]asically" "just sit[s]" for 22 hours a day. (R. at 55.)

He testified that he has constant back pain related to back surgery he had in 2004. (R. at 55.) He stated: "My left leg is numb 90 percent of the time, my right hip burns excruciatingly." (R. at 56.) He brought a cane to the hearing. (R. at 65.) A doctor did not prescribe the cane; Plaintiff began using it because "the numbness in my left leg and that burning hip, I just don't want to fall down stairs anymore." (R. at 65.) He testified that he has had the back pain, leg pain, and leg numbness since 2004. (R. at 59.)

He has migraines every day. (R. at 56.) He started medication for the migraines about one and a half or two months before the hearing. (R. at 64.) He also described problems in focus, attention, concentration, and memory. (R. at 63.)

He testified that he has urological problems and problems controlling his bowels. (R. at 69.)

4

He testified that he can stand for 15-30 minutes, sit for 10-15 minutes, and lift 20-25 pounds, although lifting causes pain the next day. Steps can be problematic, and he has fallen on them. (R. at 58.)

When asked why he became unable to work in 2010 when his impairments began years before, he said: "I was in denial . . . . I'm not functionary, I can't do what I used to be able to do. . . . And one of the major contributing factors was we were in Cherry Hill . . . and we had to try to lift this grill or something like that, and I -- it hurt so bad that I literally did not get out of bed for a week." (R. at 63.)

Plaintiff had favorable settlements in worker's compensation and attorney malpractice cases. (R. at 65-67.) Plaintiff testified that he lacked health insurance for a period of time and that his current insurance would not pay for a back specialist and would only cover the family doctor. (R. at 67.)

**C. Medical History**

While working on December 30, 2002, Plaintiff fell down a flight of stairs and suffered lumbar disc herniation. (R. at 308-09.)

On March 9, 2004, Dr. Walden Holl examined Plaintiff and diagnosed him with "pre-existing severe personality disorder characterized by vague, disorganized and paranoid thinking, inadequate emotional responsiveness, preoccupation, anxiety and

depression" and, related to the back problem, "an adjustment disorder with anxiety." (R. at 329.)

Plaintiff had a back operation on October 7, 2004, a spinal fusion at L4-L5. (R. at 357.) On April 6, 2005, Plaintiff consulted a urologist regarding sexual dysfunction and problems with voiding that began after the surgery. (R. at 360.) The urologist stated: "It appears that there has been some injury to the sympathetic nerve system" from the surgery. (R. at 361.)

Dr. Edward Tobe examined Plaintiff on May 9, 2005, and diagnosed Plaintiff with "major depressive disorder," which "derived directly from his work injury." (R. at 365.) Dr. Tobe did not find any evidence of psychotic disorder, disorganized or catatonic behavior, or disorganized sleep. (R. at 365.)

The record contains several records from Plaintiff's visits to his family doctor, Dr. Rajan Patel, from December 2010 to August 2011. (R. at 380-384.) Dr. Patel's notes are mostly illegible, although they contain multiple references to pain and Percocet. (R. at 380-384.)

Dr. Nithyashuba Khona, a state agency consultant, examined Plaintiff on September 21, 2011. (R. at 386.) Dr. Khona diagnosed Plaintiff with "chronic low back pain" and "post spinal fusion L4-5 in 2004." (R. at 389.) The exam "was an inconclusive exam secondary to poor input." (R. at 389.) Dr. Khona explained that Plaintiff "did not want to fully

participate in the exam claiming that he had pain. He did not allow the examiner to lift his left leg." (R. at 389.) Dr. Khona observed that Plaintiff "was able to bend over and put his work boots on." (R. at 389.)

On October 13, 2011, Dr. Seung Park, a state agency medical consultant, diagnosed Plaintiff with "disorders of back-discogenic and degenerative." (R. at 76.) Dr. Park found no support for mental impairments. (R. at 76.) Dr. Park determined that Plaintiff could lift up to 20 pounds occasionally and 10 pounds frequently, stand six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (R at 77-78.) Dr. Park found that the Plaintiff had no communicative, environmental, or visual limitations. (R. at 78.)

### D. Social Security Investigation

When Plaintiff applied for Social Security benefits on July 6, 2011, his interviewer observed that "clmt did not show any problems" and noted that Plaintiff did not show any difficulties with, inter alia, hearing, reading, concentrating, talking, sitting, standing, walking, or using his hands. (R. at 225.)

On September 21, 2011, the Cooperative Disability Investigations Unit conducted surveillance and video recorded Plaintiff as he went to a consultative examination and then returned home. (R. at 394.) Investigators observed that Plaintiff used a cane and limped as he walked to and from his

7

car and the medical examination building. (R. at 396.)
Investigators made videotape that showed that, upon arriving
home, he emerged from his vehicle with no apparent difficulty,
walked around the vehicle with a normal pace and stride without
using a cane, and assisted a child in exiting the vehicle, all
before grabbing his cane from the vehicle. (R. at 397.) When
Plaintiff walked from his car into his home after the
appointment, he "walked to his home and climbed the steps
without using the cane for support" and "walked without any
indication of the previously observed limp," all at a normal
pace and stride. (R. at 397.)

**E. ALJ's Decision**

The ALJ found that Plaintiff had one severe impairment:
"status post lumbar laminectomy and fusion of L4-L5 and lumbar
degenerative disc disease." (R. at 22.) He did not find other
severe impairments because "[a]lthough the claimant has alleged
having migraines, urological issues, and mental impairments,
there is minimal clinical evidence in the record to corroborate
or support any finding of significant vocational impact related
to these conditions." (R. at 23.) He explained that the record
"fails to document the severity of any migraine headaches,"
"Barlow was last treated for urological issues in 2006," "the
only mention of any mental health services was in 2004-2005,"
and thus concluded that "[t]here is no objective medical

evidence in the record to support a conclusion that any of these alleged impairments cause more than minimal functional limitations . . . ." (R. at 23.)

The ALJ then found that Plaintiff's severe impairment did not meet or equal any listed impairment in the Social Security regulations. (R. at 24.)

In assessing Plaintiff's Residual Functional Capacity ("RFC"), the ALJ did not find Plaintiff to be credible: "Despite the claimant's assertions to the contrary, the medical record does not support that the claimant's impairments are as severe as he contends." (R. at 27.) The ALJ noted that "Barlow's earnings record reflects that he was able to return to work with self-employment earnings in 2008 and wages in 2008 and 2009 reflecting earnings well over substantial gainful activity levels . . . ." (R. at 28.)

The ALJ identified "several inconsistencies which adversely affect[] Mr. Barlow's credibility": the Social Security employee who conducted Plaintiff's disability interview noted that Plaintiff "appeared to have no difficulty in . . . coherency, concentrating, talking, answering, sitting, standing, walking, . . ."; "Barlow testified that he only gets two hours of sleep a night without napping during the day since his alleged being disabled, which is obviously not physically possible"; "Barlow maintains that he spends about twenty-two hours a day just

sitting and doing very little in the way of activities, yet the evidence does not warrant the need for such a restricted his [sic] lifestyle nor does it show any necessity to limit his activities to this degree"; Plaintiff had received unemployment benefits in 2010 after his alleged disability onset date and "to receive unemployment benefits, a person must certify that they are ready, willing and able to work, a statement that contradicts allegations of having a severe impairment"; "Barlow testified having constant migraines since 2004 . . . [h]owever, medical records only reflect the claimaint only receiving refills of pain mediation [sic] since his alleged disability onset date and there is no supporting evidence that his pain and migraines are debilitating to prevent him from performing at least light work"; and "no doctor has ever supplied an opinion that Mr. Barlow is totally disabled since his alleged disability onset date". (R. at 30.)

He noted "that the record is devoid of any medical treatment after 2006 until [Plaintiff] was seen by his family doctor, Dr. Rajan Patel, on December 10, 2010. Treatment records from Dr. Patel . . . contain little in the way of objective findings to support a finding of disability . . ., as they . . . appear only to reflect Mr. Barlow being prescribed pain medication . . . ." (R. at 28.) He cited the results of Dr. Khona's examination, including Plaintiff's refusal to let the

doctor lift his left leg and the doctor's observation that
Plaintiff bent over and put his work boots on. (R. at 29.) The
ALJ also noted that Plaintiff stated twice that he cannot tie
his shoes. (R. at 25.)

He gave "great weight" to the opinion of state agency
medical consultants who determined that Plaintiff had "a severe
primary impairment of disorder of the back, but no other
diagnosis, and there was no evidence that supports a discrete
mental impairment." (R. at 29.) The consultants found that
Plaintiff "was able to lift and carry ten pounds frequently and
twenty pounds occasionally, could stand, sit, or walk for about
six hours out of eight hours during a workday, had unlimited
push/pull abilities, and had no postural, manipulative, visual,
communicative, or environmental limitations." (R. at 29.) The
ALJ found that the consultants' opinion gave Plaintiff "the
benefit of the doubt" and "is support[ed] by the totality of the
evidence, including the findings of Dr. Nithyashuba Khona . . .
." (R. at 29.) The ALJ emphasized that "[t]here are no medical
opinions in the record limiting the claimant's exertional
functional capacity lower than what has been established as the
[RFC] noted above. No doctor has ever stated or suggested that
the claimant was disabled or totally incapacitated." (R. at 29.)

The ALJ determined that Plaintiff had the Residual
Functional Capacity ("RFC") "to perform the exertional demands

11

of light work" and explained that "[i]f someone can do light
work, we (the Social Security Administration) determine that he
can also do sedentary work . . . ." (R. at 27.) He defined
Plaintiff's RFC: Plaintiff is "able to perform a full range of
light work and is able to lift/carry ten pounds frequently and
twenty to thirty pounds occasionally; can stand, sit, or walk
for about six hours out of eight hours during a workday; and has
no postural, communication, manipulative, visual, or
environmental restrictions." (R. at 27.) The ALJ concluded that
Plaintiff's "assertions concerning the severity of his
impairments, and their impact on his ability to work, are only
credible to the extent that they support a finding of being able
to perform a full range of light work." (R. at 31.)

The ALJ determined that Plaintiff's RFC was incompatible
with tile setter work and, therefore, Plaintiff could not
perform his past relevant work.

The ALJ then found, pursuant to the Medical-Vocational
Guidelines, that Plaintiff was not disabled because he was able
to perform "a full range of light work" and sedentary work and
had no nonexertional limitations. (R. at 32-33.) The ALJ also
found that Plaintiff met the Guidelines requirements in terms of
age, work history, and education. (R. at 34.)

The ALJ noted that Plaintiff's Worker's Compensation
settlement did not impact the "not disabled" finding because "a

decision by another agency that a claimant is disabled is not binding on this Administration." (R. at 33.) The ALJ stated that "Worker's Compensation deals with an individual's ability to perform his pre-injury occupation and does not address his ability to perform alternate forms of employment . . . ." (R. at 33.)

### F. Parties' Arguments

Plaintiff challenges the ALJ's findings at step two in determining whether Plaintiff had a severe impairment and argues that the ALJ wrongly dismissed his nonexertional impairments at step four. Plaintiff also asserts that the ALJ erroneously held that a claimant cannot be disabled and apply for unemployment benefits, there is no requirement that a claimant suffer "total disability," and the ALJ's understanding of Worker's Compensation requirements was erroneous. Plaintiff challenges the ALJ's finding that only two hours of sleep "is obviously not physically possible." (Pl. Br. at 10.) Plaintiff asks the Court to reverse the ALJ's decision and award benefits or, alternatively, to remand.

Defendant argues that the ALJ's decision was supported by substantial evidence and that the ALJ properly assessed Plaintiff's credibility.

Plaintiff did not file a reply.

13

## III. ANALYSIS

### A. Standard of Review

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). In other words, "[t]he Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 299 (1938)). "[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).

### B. Legal Standard for Determination of Disability

Under the Social Security Act, a "disability" is defined, for the purposes of an entitlement to benefits, as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is unable to engage in any substantial gainful activity "only if his physical or mental impairment or impairments are of

14

such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The disability determination involves a five-step sequential process:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. . . .
>
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. . . .
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.
>
> Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform h[is] past relevant work. . . .
>
> If the claimant is unable to resume h[is] former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work . . . .

Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999) (internal citations omitted). Plaintiff challenges the ALJ's findings at steps two and four.

**C. Any Error at Step Two Was Harmless**

Plaintiff argues that the ALJ erred at step two by not including Plaintiff's nonexertional impairments, such as his psychiatric and urologic issues, as severe impairments.

The ALJ indeed considered Mr. Barlow's claims of non-exertional impairments at Step Two, including having migraines, urological issues, and mental impairments. (R. at 23.) He found that "there is minimal clinical evidence in the record to corroborate or support any finding of significant vocational impact related to these conditions. (Id.) The ALJ correctly noted the sparse mention of migraine headaches in Dr. Patel's notes, and the last treatment for urological issues in 2006, and the only mention of mental health services in 2004-2005. (Id.) He found no objective medical evidence that any of these alleged conditions impacted his ability to work as of the July 1, 2010 disability onset date. (Id.) Plaintiff has not pointed to medical evidence that the ALJ has overlooked in his synopsis of these non-exertional impairments, and this Court finds that the ALJ's conclusions about the inconsequential impact of these conditions is well-supported by the medical record.

Further, any error at step two was harmless because the ALJ continued the sequential analysis. See, e.g., Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 149 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had

16

erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless"). The ALJ's analysis at step two is not a basis for reversal or remand and, "[b]ecause any error was harmless, the Court need not assess whether the ALJ's step two determination was actually erroneous." Williams v. Comm'r of Soc. Sec. Admin., Civ. 12-5637, 2013 WL 4500335, at *18 n.7 (D.N.J. Aug. 21, 2013).

**D. The ALJ Properly Determined Plaintiff's RFC**

Plaintiff argues that the ALJ erroneously "dismissed all complaints related to urologic, psychiatric and other nonexertional issues . . . ." (Pl. Br. at 7.)

Plaintiff's testimony comprised much of the evidence about his nonexertional impairments, and the ALJ need not accept the claimant's statements about his symptoms. "[T]he extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements." SSR 96-7P: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, at *4 (S.S.A July 2, 1996). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record . . . ." Id. "The adjudicator must also consider any observations about the individual recorded by Social Security Administration (SSA) employees during interviews . . . ." Id. at

17

*5. "'Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence.'" <u>Hall v. Astrue</u>, 882 F. Supp. 2d 732, 736 (D. Del. 2012) (quoting <u>Pysher v. Apfel</u>, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2001)).

The ALJ found that Plaintiff was not credible, and substantial evidence supports his conclusion. The ALJ found "several inconsistencies which adversely affect[] Mr. Barlow's credibility," including, <u>inter alia</u>: the Social Security employee who conducted Plaintiff's disability interview noted that Plaintiff "appeared to have no difficulty in . . . coherency, concentrating, talking, answering, sitting, standing, walking . . ."; "Barlow testified that he only gets two hours of sleep a night without napping during the day since his alleged being disabled, which is obviously not physically possible"; "Barlow maintains that he spends about twenty-two hours a day just sitting and doing very little in the way of activities, yet the evidence does not warrant the need for such a restricted his [sic] lifestyle nor does it show any necessity to limit his activities to this degree"; "Barlow testified having constant migraines since 2004 . . . [h]owever, medical records only reflect the claimant only receiving refills of pain mediation [sic] since his alleged disability onset date"; and Plaintiff received unemployment benefits in 2010 after his alleged

disability onset date and "to receive unemployment benefits, a person must certify that they are ready, willing and able to work, a statement that contradicts allegations of having a severe impairment." (R. at 30.)

The ALJ also noted "that the record is devoid of any medical treatment after 2006 until [Plaintiff] was seen by his family doctor, Dr. Rajan Patel, on December 10, 2010. Treatment records from Dr. Patel . . . only . . . reflect Mr. Barlow being prescribed pain medication . . . ." (R. at 28.) He also noted the results of Dr. Khona's examination, including Plaintiff's refusal to let the doctor lift his left leg and Dr. Khona's observation that Plaintiff bent over and put his work boots on,(R. at 29), even though Plaintiff stated twice that he cannot tie his shoes, (R. at 25).

These inconsistencies are substantial evidence. Essentially, the ALJ noted that the medical evidence in the record, including records from Plaintiff's family doctor, Dr. Khona, and state agency medical consultants, did not support the severe symptoms that Plaintiff claimed. The ALJ also had the benefit of meeting Plaintiff and observing his testimony and demeanor at the hearing. In particular, for example, the ALJ observed Plaintiff when he was asked how he spends his time during the day, how much he sleeps, and how he was able to work

until 2010 even though he said that his health problems, including the migraines, began in 2004.

The ALJ's reliance on the paucity of medical evidence supporting Plaintiff's claims was proper. The ALJ "is entitled to rely not only on what the record says, but also on what it does not say." Lane v. Comm'r of Soc. Sec., 100 F. App'x 90, 95 (3d Cir. 2004) (citing Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983)). In addition, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . ." 42 U.S.C. § 423(d)(5)(A). In other words, "[a] claimant's statements about pain symptoms do not alone establish disability. The Act requires objective medical evidence showing the existence of an impairment which could reasonably be expected to produce the claimed level of pain." Lane, 100 F. App'x at 96.

Plaintiff challenges the ALJ's statement that two hours of sleep per day over years "is obviously not physically possible." (Pl. Br. at 10.) Even if the ALJ's assessment of the credibility of Plaintiff's statements about his sleep was invalid, it is harmless error because the ALJ cited many other inconsistencies that undermine Plaintiff's credibility, such as the observations of Dr. Khona and the Social Security employee. In other words, excluding Plaintiff's testimony about sleep, there is still substantial evidence in the record supporting the ALJ's

determination of Plaintiff's credibility. The discrepancy between Plaintiff's claims that he cannot tie his shoes and Dr. Khona's observation of Plaintiff putting on his shoes is, alone, substantial evidence.

Plaintiff also argues that the ALJ erred in relying on Plaintiff's receipt of unemployment benefits in 2010 because such benefits do not preclude a finding of disability. This argument lacks merit. "[I]t was entirely proper for the ALJ to consider that [Plaintiff]'s receipt of unemployment benefits was inconsistent with a claim of disability during the same period." Myers v. Barnhart, 57 F. App'x 990, 997 (3d Cir. 2003). See also Milano v. Comm'r of Soc. Sec., Civ. 10-6740 (FSH), 2011 WL 6002469, at *5 (D.N.J. Nov. 30, 2011) ("Plaintiff's willingness to say he was ready, willing, and able to work, in order to collect unemployment during the period of his alleged disability further discredits his testimony"); Berrocal v. Astrue, Civ. 10-02226 (WJM), 2011 WL 890150, at *5 (D.N.J. Mar. 14, 2011) ("Plaintiff collected unemployment benefits during the period he seeks disability coverage. Such benefits are predicated on the applicant's attesting that he is able to work . . ."). "Moreover, it is clear that [Plaintiff's] receipt of

unemployment benefits was not the only reason for the ALJ's credibility assessment."[1] <u>Myers</u>, 57 F. App'x at 997.

The ALJ reviewed the record and Plaintiff's testimony, found that medical evidence did not support Plaintiff's claims about the severity of symptoms, and concluded Plaintiff's testimony was not credible. Substantial evidence supported that finding, and this Court is bound by it.

The credibility determination impacted the RFC determination. "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P: Assessing Residual Functional Capacity in Initial Claims, at *5 (S.S.A July 2, 1996). But "the ALJ need only include in the RFC those limitations which he finds to be credible." <u>Salles v. Comm'r of Soc. Sec.</u>, 229 F. App'x 140, 147 (3d Cir. 2007).

Plaintiff argues that the no evidence contradicted the psychiatric and urologic reports. The issue is not whether the medical reports were contradicted; the issue is whether those reports show limitations on Plaintiff's ability to work beyond those limitations in the RFC. The ALJ properly noted the absence of medical evidence indicating inability to work. <u>See, e.g.</u>,

---

[1] Plaintiff also argues that the Commissioner relied on extra-record evidence because "the ALJ apparently relies on his own extra-record (and incorrect) understanding of the New Jersey Unemployment Statute." (Pl. Br. at 9.) Legal sources are not extra-record evidence.

Lane, 100 F. App'x at 95 ("objective medical evidence does not
show that [Plaintiff] had an impairment that prevented her from
performing all work . . . . Not one of Lane's treating
physicians opined that she was unable to work, let alone meet
the modest demands of sedentary work. This lack of medical
evidence is very strong evidence that Lane was not disabled");
Petition of Sullivan, 904 F.2d 826, 845 (3d Cir. 1990) (a
claimant must show not just diagnosis, but functional
limitations preventing performance of substantial gainful
employment).

   Plaintiff also argues that there is no requirement that the
claimant suffer "total disability." The ALJ did not apply such a
standard. The ALJ stated that "[t]here are no medical opinions
in the record limiting the claimant's exertional functional
capacity lower than what has been established as the [RFC] noted
above. No doctor has ever stated or suggested that the claimant
was disabled or totally incapacitated." (R. at 29.) He also
noted that "no doctor has ever supplied an opinion that Mr.
Barlow is totally disabled since his alleged disability onset
date." (R. at 30.) The statements occurred in the context of
noting that the medical evidence in the record does not indicate
functional limitations that preclude an RFC of light work.
Plaintiff has not pointed to any medical opinions describing

23

limitations in his functionality. Even if the ALJ's use of the phrase "total disability" was not artful, it was harmless error.

The ALJ's determination of Plaintiff's RFC was not erroneous.

### E. A Worker's Compensation Disability Determination Does Not Mandate a Social Security Disability Determination

Plaintiff argues that the ALJ erroneously disregarded the disability finding at Plaintiff's worker's compensation proceeding. The ALJ noted that Plaintiff's Worker's Compensation settlement did not impact the finding of "not disabled" because "a decision by another agency that a claimant is disabled is not binding on this Administration." (R. at 33.) The ALJ was correct: examination reports "prepared to support worker's compensation claims . . . are, of course, admissible, but are not necessarily entitled to much weight because they are geared to entirely different statutory tests of disability . . . ." Minitee v. Harris, 510 F. Supp. 1216, 1219 (D.N.J. 1980). The Third Circuit has also "recognized the different standards for determining disability under these two programs," i.e., worker's compensation and Social Security. Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

The ALJ's reasoning was that "Worker's Compensation deals with an individual's ability to perform his pre-injury occupation and does not address his ability to perform alternate

forms of employment . . . ." (R. at 33.) Plaintiff argues, and Defendant does not dispute, that this statement is false. Regardless of his reasoning, the ALJ correctly held that the worker's compensation disability finding is not binding in a Social Security proceeding. The ALJ's holding was not erroneous and does not warrant reversal or remand.

## IV.   CONCLUSION

The Commissioner's denial of Social Security benefits will be affirmed because any error at step two was harmless; substantial evidence supported the ALJ's assessment of Plaintiff's credibility; substantial evidence supported the ALJ's determination of Plaintiff's RFC; and, regardless of his reasoning, the ALJ correctly held that the finding of disability in Plaintiff's worker's compensation proceeding was not binding on the Social Security Administration. The ALJ's decision will be affirmed and the accompanying Order will be entered.


**March 24, 2014**                          **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            Chief U.S. District Judge